*National Labor Relations Board v. Nexstar Media Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of June, two thousand twenty-six.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

_____

NATIONAL LABOR RELATIONS BOARD,

*Petitioner*,

v.                                                          24-2818

NEXSTAR MEDIA INC., AUTHORIZED TO OPERATE TELEVISION STATION WROC-TV,

*Respondent*,

THE NATIONAL ASSOCIATION OF BROADCASE EMPLOYEES & TECHNICIANS - COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,

*Intervenor*.

_____

| For Petitioner: | Jared H. Odessky (Usha Dheenan, Lynisa B. Michalski, Peter Sung Ohr, Ruth E. Burdick, Meredith Jason, *on the brief*), *for* Crystal S. Carey, General Counsel, National Labor Relations Board, Washington, D.C. |
| --- | --- |
| For Intervenor: | Judiann Chartier, Communications Workers of America, AFL-CIO, Washington, D.C. |
| For Respondent: | Dean Kpere-Daibo, Constangy, Brooks, Smith & Prophete, LLP, St. Louis, MO. |

On application for enforcement of the August 29, 2024 decision and order of the National Labor Relations Board.

**UPON DUE CONSIDERATION** of this petition for enforcement of the August 29, 2024 decision and order of the National Labor Relations Board, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for enforcement is **GRANTED**.[1]

Petitioner National Labor Relations Board ("NLRB" or "Board") seeks enforcement of its August 29, 2024 order directing Respondent Nexstar Media, Inc., Authorized to Operate Television Station WROC-TV ("Nexstar"), to recognize and bargain with Intervenor the National Association of Broadcast Employees & Technicians-Communications Workers of America, AFL-CIO (the "Union") based on its finding that Nexstar violated Sections 8(a)(1) and (a)(5) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. §§ 158(a)(1), (a)(5). Nexstar challenges the Union's certification as bargaining representative in the underlying representation proceeding on the grounds that: (1) the bargaining unit was certified improperly to include news producers, digital content producers, and creative services producers (collectively, "producers"),

---

[1] All parties reference Nexstar's cross-petition for judicial review but we discern no record of a cross-petition having been filed in this matter. At any rate, we have considered all Nexstar's arguments whether they are characterized as opposition to the Board's application for enforcement or in support of a cross-petition for judicial review, and we find them without merit.

who are supervisors within the meaning of the Act and are therefore exempt from the coverage of the Act; and (2) the NLRB abused its discretion in overruling Nexstar's election objections without a pre-election and post-election hearing. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

We review the NLRB's factual findings to determine whether they are supported by substantial evidence on the record as a whole, *see* 29 U.S.C. § 160(e), (f), reversing a factual finding "only . . . if, after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *Nat'l Lab. Rels. Bd. v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 763 (2d Cir. 1996) (internal quotation marks omitted). *See also Universal Camera Corp. v. Nat'l Lab. Rels. Bd.*, 340 U.S. 474, 488-89 (1951); *HealthBridge Mgmt., LLC v. Nat'l Lab. Rels. Bd.*, 902 F.3d 37, 43 (2d Cir. 2018). We review the NLRB's legal conclusions *de novo*. *Nat'l Lab. Rels. Bd. v. Pier Sixty, LLC*, 855 F.3d 116, 122 (2d Cir. 2017), *as amended* May 9, 2017. "Legal conclusions based upon the Board's expertise should receive, pursuant to longstanding Supreme Court precedent, considerable deference." *Nat'l Lab. Rels. Bd. v. Starbucks Corp.*, 679 F.3d 70, 77 (2d Cir. 2012) (citation modified).

**I. Challenged Ballots**

Turning first to the question whether the Union was properly certified as a bargaining unit, substantial evidence supports the NLRB's conclusion that the producers were not statutory

3

supervisors under the Act because, contrary to Nexstar's suggestion on appeal, they neither assigned work to others using independent judgment nor responsibly directed the work of others.[2]

The NLRA allows employees to organize and bargain collectively. 29 U.S.C. § 159(a); *id.* § 157. However, the Act excludes "supervisors" from collective bargaining rights. *Id.* § 152(3) ("The term 'employee' shall include any employee . . . but shall not include . . . any individual employed as a supervisor . . . ."); *id.* § 164(a) ("[N]o employer . . . shall be compelled to deem individuals defined . . . as supervisors as employees for the purposes of any law . . . relating to collective bargaining."). The NLRA defines a "supervisor" as:

> . . . any individual having authority, in the interest of the employer to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

*Id.* § 152(11). The Supreme Court has held that the Act sets forth a three-part test for determining the supervisory status of employees.

> Employees are statutory supervisors if (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their "exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment," and (3) their authority is held "in the interest of the employer."

*Nat'l Lab. Rels. Bd. v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 712-13 (2001) (quoting *Nat'l Lab. Rels. Bd. v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 573-74 (1994)).

---

[2] Regarding the challenged ballots, Nexstar also urges that the supervisory status of television producers has been well-established since *Multimedia KSDK, Inc. v. National Labor Relations Board*, 303 F.3d 896 (8th Cir. 2002). However, as the Board notes, *Multimedia* is neither binding nor pertinent.

"Supervisory status within the meaning of Section 2(11) of the NLRA is a question of fact." *Nat'l Lab. Rels. Bd. v. Meenan Oil Co.*, 139 F.3d 311, 320 (2d Cir. 1998). The "party claiming that the employee is a supervisor . . . bear[s] the burden of proving supervisory status." *Ky. River Cmty. Care*, 532 U.S. at 710-11; *see Nat'l Lab. Rels. Bd. v. Quinnipiac Coll.*, 256 F.3d 68, 73 (2d Cir. 2001).

### a. Assignment

At the start, substantial evidence supports the NLRB's conclusion that the producers did not exercise independent judgment in the assignment of others. Under the Act, to "assign" is to "designat[e] an employee to a place (such as location, department, or wing), appoint[] an employee to a time (such as a shift or overtime period), or giv[e] significant overall duties, i.e., tasks, to an employee." *In re Oakwood Healthcare, Inc.*, 348 NLRB 686, 689 (2006). Assignment does not automatically confer supervisory status; the Act also requires the use of "independent judgment." *See* 29 U.S.C. § 152(11). "[T]o exercise 'independent judgment' an individual must . . . act . . . free of the control of others and form an opinion or evaluation by discerning and comparing data." *Oakwood*, 348 NLRB at 692-93. To qualify as a statutory supervisor, assignment must "rise above the merely routine or clerical." *Id.* at 693.

*News Producers.* The record supports the Board's conclusion that the news producers do not designate employees to places or departments, assign shifts, or give significant overall duties to employees. *See id.* at 689. While Nexstar points to evidence of a news producer telling a reporter to return to the station after the reporter emailed the producer to state that an address she was visiting was inaccessible, such instruction was not an exercise of independent discretion. *See Meenan Oil*, 139 F.3d at 321. Asking a reporter to return due to an inaccessible location is merely a "commonsense consideration[]." *Id.* (quoting *B.P. Oil, Inc.*, 256 NLRB 1107, 1109 (1981),

*enf'd*, 681 F.2d 804 (3d Cir. 1982)). Further, while news producers can authorize additional airtime to a reporter, ask technical employees to perform "double boxes," and decide where a photographer will be at a location, Nexstar adduced no examples of these occurrences, and thus failed to show how news producers make such judgments and consider "the factors weighed or balanced." *See In re Croft Metals, Inc.*, 348 NLRB 717, 722 (2006). Without such evidence, the Board properly declined to "conclude that the degree of discretion involved in these activities rises above the routine or clerical." *See id.*

*Digital Content Producers.* Substantial evidence also supports the Board's finding that the digital content producers are not supervisors within the meaning of Section 2(11) of the Act. Nexstar points to evidence that a digital content producer requested that an editor expedite a task. Because the digital content producer was acting at the behest of the Digital Executive Producer, however, this example does not establish supervisory status. Nor does evidence that a digital content producer sought permission from the News Director to obtain a substitute for an unavailable photographer. Without more, both examples instead show that the digital content producers *lack* authority to assign.

*Creative Services Producers.* Finally, substantial evidence supports the Board's finding that the creative services producers are also not supervisors within the meaning of Section 2(11) of the Act. Although the creative services producers may direct the designer to create graphics and motion graphics, instruct the designer to shoot video, and the editor to edit commercial copy, such assignment does not rise above the routine or clerical. Because there was only one designer and one editor in the department, there was only one self-evident choice. *See Oakwood*, 348 NLRB at 693 ("If there is only one obvious and self-evident choice (for example, assigning the one available nurse fluent in American Sign Language (ASL) to a patient dependent upon ASL for

6

communicating) . . . then the assignment is routine or clerical in nature and does not implicate independent judgment . . . .”).

### b. Responsible Direction

Substantial evidence similarly supports the NLRB's conclusion that the producers do not responsibly direct the work of others. To qualify as a supervisor by virtue of such direction, “the person directing and performing the oversight of the employee must be accountable for the performance of the task by the other, such that some adverse consequence may befall the one providing the oversight if the tasks performed by the employee are not performed properly.” *Id.* at 691-92. Here, the record is devoid of evidence that the news producers, digital content producers, or creative service producers were responsible for a subordinate's performance of his or her job. Therefore, Nexstar failed to show that these producers responsibly directed the work of others.

## II. Election Objections

Nexstar next challenges the NLRB's decision to overrule its election objections and certify the Union without a hearing. As we have said before, “when reviewing a request to overturn a Board decision refusing to set aside an election, we are limited to the narrow question of whether the Board abused its discretion in certifying the election.” *Nat'l Lab. Rels. Bd. v. Arthur Sarnow Candy Co., Inc.*, 40 F.3d 552, 556 (2d Cir. 1994) (citation modified). Nexstar bears the burden of demonstrating such abuse. *Id*. Moreover, “[t]he Board has broad discretion to determine whether the circumstances of an election come sufficiently close to laboratory conditions so that employees can exercise free choice in deciding whether to select the Union as their representative.” *Amalgamated Serv. & Allied Indus. Joint Bd. v. Nat'l Lab. Rels. Bd.*, 815 F.2d 225, 227 (2d Cir. 1987). And to obtain a hearing, an objecting party must make an “offer of proof” raising

"substantial and material factual issues which, if resolved in its favor, would warrant setting aside the election." *Nat'l Lab. Rels. Bd. v. Newton-New Haven Co.*, 506 F.2d 1035, 1036 (2d Cir. 1974) (quoting *Polymers, Inc. v. Nat'l Lab. Rels. Bd.*, 414 F.2d 999, 1004-05 (2d Cir. 1969), *cert. denied*, 369 U.S. 1010 (1970)); *see also* 29 C.F.R. § 102.69(c)(1)(i). Here, the Board did not abuse its discretion in overruling Nexstar's objections.

### a. Pre-Election Litigation of Voter Eligibility

At the start (and contrary to its argument on appeal), Nexstar was not entitled under the 2019 Rule to a pre-election hearing on voter eligibility. Under the 2019 Rule, "[d]isputes concerning unit scope, voter eligibility and supervisory status *will normally be* litigated and resolved by the Regional Director before an election is directed. However, the parties may agree to permit disputed employees to vote subject to challenge, thereby deferring litigation concerning such disputes until after the election." Representation-Case Procedures, Final Rule, 84 Fed. Reg. 69,524, 69,593 (Dec. 18, 2019) (codified at 29 C.F.R. § 102.64(a)) (emphasis added). The 2019 Rule is inapplicable here, where there was an election agreement in which all parties waived a pre-election hearing in favor of post-election litigation. *See Nat'l Lab. Rels. Bd. v. Black Bull Carting Inc.*, 29 F.3d 44, 46 (2d Cir. 1994) ("A party seeking to overturn an election on the ground of a procedural irregularity has a heavy burden. The presence of such an irregularity is not in itself sufficient to overturn an election." (citation modified)). Nexstar's argument to the contrary is without merit.

### b. Voter List

Nor has Nexstar shown that the Board's election agent compromised the election's integrity in contravention of the right to refrain, 29 U.S.C. § 157, by giving both parties the names of the challenged voters who had cast a ballot during the first voting session prior to

commencement of the second voting session. Here, the election agent's list-keeping was in line with the Board's established practices. *See In re Mead Coated Bd., Inc.*, 337 NLRB 497, 498 (2002) ("[T]he Board has long recognized the right to refer to a challenge list as an exception to the general prohibition against keeping lists, in order to ensure that the parties have a full opportunity to challenge the ballots of voters they believe to be ineligible." (citing *Bear Creek Orchards*, 90 NLRB 286 (1950))). Because the stipulated election agreement expressly provided that employees in the disputed categories would vote subject to challenge, the election agent was permitted to keep a challenge list. Furthermore, the election agent took a number of precautions to safeguard the integrity of the election and the secrecy of the challenged voters. And critically, "[o]ur review of the record reveals no evidence which indicates that the outcome of the election was affected by the disclosure." *Rochester Joint Bd., Amalgamated Clothing & Textile Workers Union v. Nat'l Lab. Rels. Bd.*, 896 F.2d 24, 27 (2d Cir. 1990).

### c. Union Dues

Finally, the Board acted within its discretion in overruling Nexstar's objection asserting that the Union interfered with the election by supposedly discounting its union membership dues. "[U]nions are allowed to describe preexisting benefits to which employees would ordinarily be entitled as union members," but may not "create new benefits for the purpose of the election, or condition the receipt of such benefits on joining the union before the election or on voting for the union." *Jam Prods., Ltd.*, 371 NLRB No. 26, slip op. at 13 (2021) (citing *Dart Container of Cal.*, 277 NLRB 1369, 1370 (1985)). To succeed with an objection, "[t]he Employer must demonstrate, based upon an objective standard, whether the Union's conduct would reasonably have a tendency to influence the outcome of the election." *Needham Excavating, Inc.*, 371 NLRB No. 146, slip op. at 41 (2022) (citation modified). We consider the following factors: "the size

of the benefit related to the stated purpose of granting it; the timing of the benefit compared to the election; and how employees would reasonably view the purpose of the benefit." *Id.*

Here, the Union described a pre-existing condition of union membership. The Union told employees that they would be placed in Local 51022 and that their dues rate would be 1.33% of gross wages. There was no discount because the Union did not disseminate a higher dues rate prior to releasing this information. Rather, five days prior, *Nexstar* released a different dues rate for a different union chapter that cannot be attributed to the Union. Furthermore, the Board correctly concluded that Nexstar's proffered evidence concerning the open and notorious union supporter was insufficient to warrant a hearing because it was unclear whether such a statement was attributable to the Union.

Moreover, the *Needham Excavating* factors counsel in favor of the Board's determination that the Union's conduct had little tendency to influence the outcome of the election. First, the size of the benefit is negligible at .34% of gross wages. *See id.* Second, the Union released this information ten days after the stipulated election agreement was signed and approved and a little over two weeks in advance of the election. *See id.* No meaningful conclusions can be drawn from the timing given the short window between the election agreement and election. Finally, the employees would reasonably view the purpose of the benefit as neutral information about different union chapter fees. *See id.* And a union is allowed unconditionally to "lower[] . . . self-imposed barriers" to union membership by lowering the dues structure. *Nat'l Lab. Rels. Bd. v. Whitney Museum of Am. Art*, 636 F.2d 19, 22 (2d Cir. 1980).

In sum, we conclude that the Board acted within its wide discretion in overruling Nexstar's election objections without a post-election hearing. *See Nat'l Lab. Rels. Bd. v. Hale Mfg. Co.*, 602 F.2d 244, 248 (2d Cir. 1979) ("[A] party is entitled to a hearing if it demonstrates by Prima

facie evidence the existence of substantial and material factual issues which, if resolved in its favor, would require the setting aside of the representation election." (citation modified)). The Board properly certified the Union and Nexstar concedes its refusal to recognize and bargain with the Union. Therefore, we discern no error in the Board's determination that Nexstar violated Sections 8(a)(5) and (1) of the Act.

*    *    *

We have considered Nexstar's remaining arguments and find them to be without merit. Accordingly, the petition for enforcement is **GRANTED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk